## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DAMARION BONDS

        Plaintiff,

v

CENTRAL MICHIGAN UNIVERSITY,
ROCHESTER UNIVERSITY, SCOTT E.
SAMUELS, THOMAS H. IDEMA, JR.,
and MARY MARTINEZ,


        Defendant.

Case No. 2:25-cv-10904
Hon.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff DAMARION BONDS, by and through his attorneys, HAMMOUD, DAKHLALLAH AND ASSOCIATES, PLLC and THE SALEM LAW FIRM, P.C., and for his COMPLAINT against Defendants CENTRAL MICHIGAN UNIVERSITY, ROCHESTER UNIVERSITY, SCOTT E. SAMUELS, THOMAS H. IDEMA, JR., and MARY MARTINEZ, hereby states as follows:

### I.      PARTIES AND JURISDICTION

1. This action is brought for due process violations under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983; for violations of Title IX, 20 U.S.C. § 1681, *et seq*.; and for additional state law violations under the Michigan Compiled Laws.

2. This Court has federal subject matter jurisdiction over Plaintiff's 42 U.S.C. §
   1983 and Title IX claims pursuant to 28 U.S.C. § 1331 and § 1343. This Court
   has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28
   U.S.C. § 1367.

3. At times relevant to this Complaint, Plaintiff Damarion Bonds ("Bonds") is
   or was a student at Rochester University ("Rochester") and later, a student at
   Central Michigan University ("CMU"). Plaintiff's claims arise out of actions
   taken against him by Defendants for alleged violations of the Rochester
   Student Code of Conduct. Defendants further took improper actions against
   Bonds under the CMU Code of Student Right, Responsibilities and
   Disciplinary Procedures.

4. At times relevant to this Complaint, Defendant Scott E. Samuels ("Samuels")
   was the Vice President of Student Life, Admissions, and Marketing at
   Rochester, and Title IX Coordinator.

5. At times relevant to this Complaint, Defendant Thomas H. Idema, Jr. was the
   Director of Student Conduct at CMU.

6. At times relevant to this Complaint, Defendant Mary Martinez was the Title
   IX Coordinator and Assistant to the President for the Office of Civil Rights
   and Institutional Equity ("OCRIE") at CMU.

7. The above named individual defendants are sued both in their personal and official capacities.

8. Defendant Rochester is a private university based in Rochester Hills, Michigan.

9. Defendant CMU is a public university in Mount Pleasant, Michigan.

10. The events underlying this Complaint took place in Rochester Hills and Mt. Pleasant, Michigan, making venue in this District proper.

## II.   <u>BACKGROUND</u>

11. Damarion Bonds attended Rochester University on an athletic scholarship to play basketball during the 2022-2023 season.

12. Bonds transferred to Henry Ford College on another athletic scholarship and played basketball there during the 2023-2024 season.

13. Bonds ultimately transferred to CMU on an athletic scholarship where he played for the Chippewas during the 2024-2025 season. Before this season concluded, Bonds was wrongfully terminated from CMU.

14. In or around late 2022, Bonds was cited for a violation of the Rochester University Student Code of Conduct, § 2.12 Residential Policies.

15. Specifically, Bonds was cited to be found in a residence hall with a member of the opposite sex.

16. This member had made unfounded complaints about Bonds to Rochester officials.

17. To date, all such complaints were unsubstantiated and resulted in no further citation, charges, or inquiries into Bonds.

18. By the end of the Rochester basketball season (calendar year, 2023), Bonds had made arrangements to transfer to Henry Ford College.

19. To complete his calendar year at Rochester, and to effectuate the transfer to Henry Ford, Bonds was forced to sign a Sanction Notice on April 6, 2023 memorializing the citation mentioned above.

20. In the Sanction Notice, Bonds received a sanction of being suspended from Rochester University Housing for the 2023-2024 academic year, and was placed on probation for this year as well.

21. The Sanction Notice included a citation for violation of § 4.2 of the Rochester University Student Code of Conduct, Abuse.

22. However, Bonds had not committed any abuse at Rochester, whatsoever.

23. Rochester had no evidence, no findings, and no factual foundation to support any citation for abuse.

24. In closing his chapter at Rochester, and for the sole purpose of allowing his transfer application to Henry Ford to be completed, Bonds executed the Sanctions Notice.

25. Nevertheless, Bonds did not attend Rochester during the 2023-2024 academic year.

26. Instead, Bonds transferred to Henry Ford where he attended the institution and played basketball for this school during the 2023-2024 academic year.

27. After a stellar season at Henry Ford, Bonds was recruited to join CMU's basketball team on an athletic scholarship.

28. Bonds completed a transfer application to be admitted at CMU.

29. As part of the transfer application, Bonds was required to respond to several questions about his past educational history.

30. In one such question, Bonds was asked

"For reasons involving academic dishonesty, financial impropriety, or an offense that harmed or had the potential to harm others, has any secondary school or college/university that you have attended taken any of the following actions against you: expulsion, suspension, placed on a probationary period, other disciplinary action, or entered into an informal resolution resulting in disciplinary action with you?

This is hereinafter referred to as the "Application Question".

31. Bonds responded "No" to the Yes or No inquiry of the Application Question.

32. Bonds was admitted into CMU and joined the basketball program.

33. On October 18, 2024 Defendant Mary Martinez wrote a memorandum addressed to Defendant Idema, Robert Davies (former President of CMU), Tangela Cheatham (Deputy Athletic Director at CMU), and Andy Brockman

(Assistant General Counsel at CMU). This memo is referred to as the "Martinez Memo".

34. The Martinez Memo stated in relevant part the following allegations:

    a. On October 15, 2024, OCRIE was informed by CMU Athletics that Bonds had not completed the Previous Institution Verification Form "PIVF" for Rochester and Henry Ford.

    b. On October 14, 2024 Bonds had completed his version of the PIVF for both Rochester and Henry Ford.

    c. On the PIVF, Bonds responded "No" to Question No. 2 which stated: "Is this student currently subject to any Title IX or sexual misconduct investigation or grievance process that has not yet been completed?"

    d. On October 15, 2024, Rochester completed its version of the PIVF regarding Bonds. Regarding that same Question No. 2, Rochester responded "Yes", responding that Bonds was the subject of a Title IX investigation that was not completed because the complainant left Rochester mid-investigation.

    e. On October 16, 2024, Martinez spoke with Defendant Scott Samuels (Rochester Title IX Coordinator) and learned that the Rochester Title IX complaint involved dating violence and sexual assault. While the

Title IX Investigation was not completed, facts found during the investigation led to violations and Rochester imposed sanctions.

f.  Martinez spoke with Rochester coach Klint Pleasant and learned that Bonds was dismissed from the basketball team at Rochester and was not eligible to return to Rochester as a student athlete.

g.  Bonds responded "No" to a CMU Application question regarding being suspended or dismissed from a previous school.

h.  Martinez found this response to be "technically accurate" as Bonds was not dismissed from Rochester as a student, but rather, as a student athlete.

i.  Martinez nonetheless recommended this information regarding Bonds possibly providing false information in his PIVF.

j.  Martinez further recommended that the CMU Athletic Department evaluate Bonds' eligibility to continue as a student athlete as OCRIE would have recommended that Bonds not be recruited into CMU based on the alleged information that she received from Defendant Idema.

35. Martinez ultimately referred this matter to the Office of Student Conduct to determine the question of whether Bonds provided false information to CMU.

36. During Bonds' basketball season at CMU, and based on the Martinez Memo, CMU's Office of Student Conduct charged Bonds with violating CMU's

Code of Student Rights, Responsibilities, and Disciplinary Procedures ("CMU Code") § 3.2.2 False Information.

37. Specifically, on October 18, 2024, Bonds was charged with providing a false response to the Application Question.

38. A hearing was set for November 22, 2024 pursuant to § 5 of the CMU Code ("November Hearing").

39. Pursuant to § 5.2.2 *et seq.*, a Hearing Body was appointed to preside over the November Hearing.

40. § 5.2.3.1 states that in all disciplinary hearings, the burden of proof rests with the Conduct Proceedings Officer, who must prove **by a preponderance of the evidence** that a violation has occurred.

41. Bonds was notified that the Conduct Proceedings Officer **will present all relevant information in support of the allegation(s)**.

42. At the November Hearing, the Conduct Proceedings Officer failed to meet its burden of proof.

43. At the November Hearing, the Conduct Proceedings Officer was Defendant Idema.

44. At the November Hearing, Idema read the Martinez Memo into the record.

45. Idema stated that the investigation into this situation revealed that Bonds falsely responded to the Application Question.

46. Idema then cited the Sanction Notice.

47. Idema concluded that the Sanction Notice constituted disciplinary action within the purview of the Application Question, and thus Bonds was charged as stated above.

48. Idema failed to disclose to the Hearing Body that any "sanction" levied by Rochester was for a time period where Bonds had not attended Rochester; and the finding by Martinez that Bonds technically answered the question correctly.

49. The Hearing Body failed to consider that the Martinez Memo was erroneous.

50. The Conduct Proceedings Officer, in relying on the Martinez Memo, failed to produce Martinez to be questioned about her erroneous findings and recommendations.

51. Indeed, the Martinez Memo was substantially untrue and misleading.

    a. Martinez herself opined that Bonds had accurately responded to the PIVF.

    b. Martinez's conversation with Defendant Samuels, as presented in the Memo and read by Idema, suggested to the Hearing Body that Bonds was sanctioned for the Rochester Title IX Investigation.

    c. However, the Rochester Title IX Investigation was not completed as the complainant left Rochester before the Investigation was completed, and the investigation was closed.

    d. Martinez further did not advise that the Sanction Notice was for a period of time where Bonds was not a student at Rochester.

    e. This further misled the Hearing Body into believing that the Sanction Notice actually imposed penalties on Bonds as a student at Rochester.

    f. The Martinez Memo ultimately recommended an evaluation into Bonds' eligibility based on information received from Rochester University notwithstanding her opinion that Bonds accurately answered the question on CMU's admission application.

52. As a result of the November Hearing, and citing only the erroneous Martinez Memo and the faulty Sanctions Notice, the Hearing Body determined that Bonds had violated the CMU Code § 3.2.2 False Information. This decision was rendered on December 4, 2024.

53. The Hearing Body accepted Idema's recommended sanction under CMU Code § 4.1.11 Dismissal, thereby dismissing Bonds from CMU entirely, and dismissing Bonds from participation in his basketball season at CMU.

54. Bonds timely appealed this erroneous decision to the Appeals Board pursuant to CMU Code § 5.4. A hearing was set for December 18, 2024.

55. Based on the facts presented at the appeal, the Appeals Board did not find that anything was done so egregiously to warrant changing the findings and sanctions of the case.

56. As a result of the Appeals Board decision, the sanction of dismissal under CMU Code § 4.1.11 was upheld.

57. Bonds once again appealed the decision of the Appeals Board pursuant to CMU Code § 5.4.13 and 5.4.14, requesting discretionary review by the Vice President of Student Affairs or the President.

58. On February 5, 2025, Interim CMU Vice President Stan Shingles upheld the decision of the Appeals Board.

59. At this point, Bonds was dismissed from CMU and the basketball team and no longer enrolled at CMU.

60. Bonds has suffered, and will continue to suffer, irreparable harm.

61. Bonds has been removed from CMU, jeopardizing his ability to complete his undergraduate academic courses for 2024-2025, resulting in his failure to meet his percentage to degree as required by the NCAA, further jeopardizing his ability to transfer to another Division 1 basketball program as a student athlete.

62. Bonds is now forced to transfer to yet another academic institution where he will have to restart a full semester worth of classes and losing a year of NCAA eligibility.

63. Additionally, Bonds has been dismissed from CMU's basketball team, where he had a promising career as a student-athlete, and later, a professional athlete domestically and/or overseas.

64. This career is now derailed as Bonds has been removed from what was a promising season.

65. Bonds is now forced to find yet another institution, which cannot accept him in the middle of this current season, and can only accept him after this season has concluded, assuming he is able to make up his second semester courses for the 2024-2025 academic year.

66. Further, upon information and belief, the PIVF was improperly and untimely issued by CMU to Bonds.

67. Due to CMU's rush and scramble to complete the PIVF for Bonds, which is required pursuant to the Equity in Athletics Disclosure Act:

   a. CMU impeded Bonds' ability to provide full and complete information;

   b. CMU impeded Bonds' ability to provide significant factual information that upon information and belief, would have materially altered the substance or interpretation of the PIVF;

c.  CMU impeded Bonds' ability to verify information that it received from Rochester or any other previous institution.

### III.    CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

### PROPERTY AND LIBERTY INTERESTS DEPRIVED BY ROCHESTER UNIVERSITY

66. Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

67. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

68. Fourteenth Amendment due process protections are required in higher education disciplinary decisions at public institutions.

69. Bonds was entitled to notice and a meaningful opportunity to be heard, including a hearing and cross-examination, once a formal complaint or charged was filed against him, and prior to the deprivation of his property interest in his education. Bonds has been deprived of due process protections and was sanctioned by Rochester.

70. Bonds has a protected liberty interest in his good name, reputation, honor, and integrity which he cannot be deprived of by the state absent due process.

13

71. Bonds has a protected liberty interest in pursuing his education at a public university, which the state cannot deprive him of absent due process.

72. Bonds also has a protected liberty interest in his future educational and employment opportunities, such as his professional basketball career, which the state cannot deprive him of absent due process.

73. Bonds is entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing. Here, the allegations and findings of Rochester University, Scott E Samuels, and the Department of Student Life, Admissions, and Marketing were of the utmost seriousness, have lifelong ramifications, and are quasi-criminal in nature.

74. Bonds has a significant interest in avoiding an adverse decision against him based on a denial of due process protection.

75. Defendants know that Bonds has a clearly established right to due process protections, and a reasonable person would know that failing to apply those standards of review would violate Bonds' due process rights.

76. Providing a due process protection imposes no administrative burden Rochester.

77. As a direct result of Defendants' unlawful actions, Bonds has and will continue to suffer irreparable harm, injury, and damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below.

## COUNT II – 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

## PROPERTY AND LIBERTY INTERESTS DEPRIVED BY CMU

78. Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

79. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

80. Fourteenth Amendment due process protections are required in higher education disciplinary decisions at public institutions.

81. Bonds was entitled to notice and a meaningful opportunity o be heard, including a hearing and cross-examination, once a formal complaint or charged was filed against him, and prior to the deprivation of his property interest in his education. Bonds has been deprived of due process protections and has been dismissed from CMU.

82. Bonds was entitled to obtain his official degree upon completion of CMU's requirements but he has been deprived of those credentials, and his property interest in his education, without due process of law.

15

83. Bonds has a protected liberty interest in his good name, reputation, honor, and integrity which he cannot be deprived of by the state absent due process.

84. Bonds has a protected liberty interest in pursuing his education at a public university, which the state cannot deprive him of absent due process.

85. Bonds also has a protected liberty interest in his future educational and employment opportunities, such as his professional basketball career, which the state cannot deprive him of absent due process.

86. Bonds is entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing. Here, the allegations of the CMU Office of Student Conduct were of the utmost seriousness, have lifelong ramifications, and are quasi-criminal in nature.

87. Bonds has a significant interest in avoiding an adverse decision against him based on a denial of due process protection.

88. Defendants know that Bonds has a clearly established right to due process protections, and a reasonable person would know that failing to apply those standards of review would violate Bonds' due process rights.

89. Providing a due process protection imposes no administrative burden on CMU.

90. As a direct result of Defendants' unlawful actions, Bonds has and will continue to suffer irreparable harm, injury, and damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below.

## COUNT III – VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 (CMU)

91. Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

92. Title IX of the Education Amendments of 1972 states that "[n]o person in the United States shall, on the basis of sex be…denied the benefits of, or be subjected to the discrimination under any education program or activity receiving Federal financial assistance."

93. At all times relevant to this Complaint, Title IX applied to CMU and its officials, as Rochester receives federal financial assistance.

94. Title IX may be violated when a defendant treats similarly situated persons differently on the basis of the sex of the individual.

95. In this case, CMU, Idema, and Martinez treated Bonds differently on the basis of sex.

96. Under the laws of this Circuit, a plaintiff may plead an erroneous outcome theory of liability under Title IX. *Doe v. Miami University*, 882 F.3d 579, 589 (6th Cir. 2018).

97. To plead an erroneous-outcome claim under Title IX, a Plaintiff found guilty of sexual assault by a university must allege: "(1) facts sufficient to case some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized…causal connection between the flawed outcome and the gender bias" *Id*.

98. Here, CMU's improper reliance on the Rochester Sanction Notice, its failure to allow Bonds to rectify the erroneous Sanction Notice, its failure to consider Bonds' factual defenses to the Sanction Notice and its underlying allegations, and its improper reliance on the Rochester recommendations, did not only constitute a risk of an erroneous deprivation of a private interest in remaining a student, it led to his actual dismissal at CMU. See *Doe v. University of Michigan*, 325 F.Supp.3d 821, 827 (E.D. Mich. 2018).

99. The discriminatory and different treatment is evident in, inter alia, the CMU Defendants' hasty and improper reliance on the Rochester Sanction Notice, the Rochester recommendation for Bonds' admission, and OCRIE's recommendation that it would not pursue Bonds as a transfer student at CMU based on the Rochester information.

100.    The CMU Defendants' involvement in these proceedings, from investigation through final disposition and dismissal, disfavored Bonds and treated Bonds' positions, justifications, defenses, and rights to due process differently on the basis that they needed to protect and otherwise defer to the female accuser, even when her allegations were uncorroborated, uncontroverted, and ultimately abandoned.

101.    The facts recounted herein and above do not support the CMU Defendants' decision to subject Bonds to the university's disciplinary system, as the conduct alleged was never corroborated or supported. The claims against Bonds were ultimately abandoned.

102.    Bonds has pleaded sufficient facts to show the existence of bias, and its connection to the erroneous outcome of his dismissal from CMU.

103.    The disparate treatment of Bonds at each stage of the Rochester disciplinary process was the result of gender bias, and a clear act of sex discrimination, leading directly to the CMU Defendants' decision to dismiss Bonds from the university.

104.    As a direct and proximate result of the foregoing, Bonds has been damaged, and Bonds is entitled to a judgment against the CMU Defendants, awarding him damages in an amount to be determined at trial, including without limitation, damages to his physical and mental well being, emotional

and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorney's fees, costs, expenses, and all further relief that this Court deems necessary, proper, and just under the circumstances.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below.

## COUNT IV – VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 (ROCHESTER)

105.    Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

106.    Title IX of the Education Amendments of 1972 states that "[n]o person in the United States shall, on the basis of sex be…denied the benefits of, or be subjected to the discrimination under any education program or activity receiving Federal financial assistance."

107.    At all times relevant to this Complaint, Title IX applied to Rochester and its officials, as Rochester receives federal financial assistance.

108.    Title IX may be violated when a defendant treats similarly situated persons differently on the basis of the sex of the individual.

109.    In this case, Rochester and Samuels treated Bonds differently on the basis of sex.

110.    Under the laws of this Circuit, a plaintiff may plead an erroneous outcome theory of liability under Title IX. *Doe v. Miami University*, 882 F.3d 579, 589 (6th Cir. 2018).

111.    To plead an erroneous-outcome claim under Title IX, a Plaintiff found guilty of sexual assault by a university must allege: "(1) facts sufficient to case some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized…causal connection between the flawed outcome and the gender bias" *Id*.

112.    Here, Rochester's decision to deprive Bonds of his right to cross-examine the complaining witness or question witnesses against him did not only constitute a risk of an erroneous deprivation of a private interest in remaining a student, it led to his actual Sanction Notice and his ultimate dismissal at CMU. See *Doe v. University of Michigan*, 325 F.Supp.3d 821, 827 (E.D. Mich. 2018).

113.    The discriminatory and different treatment is evident in, inter alia, the Rochester Defendants' rush to execute the Sanction Notice, several months after the alleged violation had occurred, but without notifying Bonds that the

complainant had left Rochester rendering all such allegations incomplete, and without notifying Bonds of the official status of the proceedings.

114.    Bonds had no way of knowing the practical effect of his execution of the Sanction Notice.

115.    Bonds additionally had no way of ascertaining the allegations against him.

116.    The Rochester Defendants pursued the Sanction Notice as an official decision of the institution without completing the investigation in full and providing Bonds' the aforementioned rights and opportunities.

117.    The Rochester Defendants' involvement in these proceedings, from investigation through final disposition and dismissal, disfavored Bonds and treated Bonds' positions, justifications, defenses, and rights to due process differently on the basis that they needed to protect and otherwise defer to the female accuser, even when her allegations were uncorroborated, uncontroverted, and ultimately abandoned.

118.    The Rochester Defendants' investigation failed to generate any evidence to support these claims.

119.    The Rochester Defendants' discriminatory conduct, and levy of the Sanctions Notice, was an improper method of finalizing this matter by leveraging Bonds' impending transfer to Henry Ford College.

120.     Indeed, the Sanction Notice was executed as a de-facto release allowing Bonds to transfer to Henry Ford College.

121.     The facts recounted herein and above do not support the Rochester Defendants' decision to subject Bonds to the college's disciplinary system, as the conduct alleged was never corroborated or supported. The claims against Bonds were ultimately abandoned.

122.     Bonds has pleaded sufficient facts to show the existence of bias, and its connection to the erroneous outcome of the Sanction Notice.

123.     The disparate treatment of Bonds at each stage of the Rochester disciplinary process was the result of gender bias, and a clear act of sex discrimination, leading directly to the Rochester Defendants' decision to (1) require execution of the Sanction Notice and (2) report the Sanction Notice to CMU upon Bonds' eventual transfer to CMU. This led directly to the dismissal of Bonds at CMU.

124.     As a direct and proximate result of the foregoing, Bonds has been damaged, and Bonds is entitled to a judgment against the Rochester Defendants, awarding him damages in an amount to be determined at trial, including without limitation, damages to his physical and mental well being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career

prospects, plus prejudgment interest, attorney's fees, costs, expenses, and all further relief that this Court deems necessary, proper, and just under the circumstances.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below:

## <u>COUNT V – INJURIOUS FALSEHOOD</u>

125.    Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

126.    As described above, Defendants published false statements harmful to the interests of Bonds.

127.    Defendants intended for publication of these statements to result in harm to the interests of Bonds having a pecuniary value, and Defendants recognize that these statements are likely to do so.

128.    Defendants knew or should have known that the statements made were false and have acted in reckless disregard of their truth or falsity. Defendants also acted with malice.

129.    As a result of Defendants' actions as described herein, Bonds has incurred special and actual damages due to the falsity of the statements published.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below:

## COUNT VI - NEGLIGENCE

130.     Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

131.     At all times relevant to this matter, Defendants owed Bonds a duty of care in ensuring that all personal, complaint, matter, and other information collected, maintained, and disseminated by Defendants, would be so collected, maintained, and disseminated in accordance with university/college policies, state, and federal laws.

132.     Defendants further owed Bonds a duty ensuring that all such information would be true, accurate, and reliable.

133.     Defendants breached this duty owed to Bonds due to their negligent collection, maintenance, and dissemination of Bonds' sensitive and crucial personal, complaint, matter, and other information to the various parties as described above.

134.     As a proximate result of Defendants' breaches of duty described above, Bonds has suffered damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below:

## COUNT VII – PROMISSORY ESTOPPEL

135.    Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

136.    Defendants' various policies, which are clear and definite, constitute representations and promises that each respective institution should have reasonably expected to induce action or forbearance of a definite and substantial character by Bonds.

137.    Defendants expected or should have expected Bonds to accept its offer of admission, incur tuition and fee expenses, and choose not to attend other colleges based on their express and implied promises that they would not deny Bonds his procedural rights should he be accused of a violation of each Defendants' policies.

138.    Bonds, in fact, reasonably relied to his detriment on these express and implied promises and representations by Defendants, and those acting for and on their behalf, such that promises and representations made by Defendants must be enforced if injustice is to be avoided.

139.    Based on the foregoing, Defendants are liable to Bonds based on promissory estoppel.

140.    Bonds is entitled to recover damages for Defendants' breach of the express and/or implied contractual obligations described above. As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages including, without limitation, emotional distress, loss of educational and other career opportunities, economic injuries, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

141.    Plaintiff realleges and reincorporates all previous paragraphs as if fully set forth herein.

142.    Defendants' conduct, as more fully outlined herein and above, including but not limited to failing to provide due process, was intentional, or, in the alternative, reckless.

143.    Defendants' conduct, as more fully outlined herein and above, including but not limited to failing to provide due process, was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

144.    Defendants' conduct, as more fully outlined herein and above, including but not limited to failing to provide due process, was for one or more ulterior motives or purposes that are as yet unknown to Bonds, as Defendants have refused to provide Bonds with the specific basis or bases for his dismissal.

145.    Defendants conduct caused and resulted in severe and serious emotional distress to Plaintiff.

146.    As a direct and proximate result of Defendants' conduct, Bonds has suffered emotional and psychological distress, humiliation, embarrassment, and other damages that may arise during the course of discovery and the course of trial in this matter.

147.    Defendants' conduct as described herein was so egregious, malicious, and willful as to warrant an award of exemplary damages under Michigan law.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the relief mentioned below:

## IV.    <u>REQUESTED RELIEF</u>

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter JUDGMENT in favor of Plaintiff and against all Defendants, jointly and severally, with the following relief:

**<u>Equitable Relef:</u>**

A. An injunction from this Court halting the dismissal of Bonds from CMU, and reinstating him as a student and athlete at CMU;

B. An injunction from this Court further prohibiting CMU from assessing any other fines, penalties, or sanctions against Bonds;

C. A ruling that, as a matter of law, Bonds' due process rights were violated;

D. An award of interest, costs, and a reasonable attorney's fee; and

E. Any further equitable relief that is reasonable, necessary, and appropriate

**<u>Legal Relief</u>**

A. Compensatory damages in whatever amount Bonds is found to be entitled to;

B. Exemplary damages in whatever amount Bonds is found to be entitled to;

C. Punitive damages in whatever amount Bonds is found to be entitled to; and

D. An award of interest, costs, and a reasonable attorney's fee.

Respectfully submitted,

Tarik D. Turfe (P83690)
Hammoud, Dakhlallah,
& Associates, PLLC
Attorney for Plaintiff

29

6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
Dated: March 31, 2025          tt@hdalawgroup.com

Edmond E. Salem, Esq.
(*application for admission forthcoming*)
THE SALEM LAW FIRM, P.C.
Attorney for Plaintiff
11620 Wilshire Blvd., Suite 715
Los Angeles, CA 90025
PH (310) 828-7882
Dated: March 31, 2025          ees@thesalemlawfirm.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DAMARION BONDS

           Plaintiff,

v

CENTRAL MICHIGAN UNIVERSITY,
ROCHESTER UNIVERSITY, SCOTT E.
SAMUELS, THOMAS H. IDEMA, JR.,
and MARY MARTINEZ,

           Defendant.

Case No. 2:25-cv-10904
Hon.

_____/

### DEMAND FOR JURY TRIAL

    NOW COMES Plaintiff DAMARION BONDS, by and through his attorneys,

HAMMOUD, DAKHLALLAH AND ASSOCIATES, PLLC and THE SALEM

LAW FIRM, P.C., and hereby demands a trial by jury on all matters triable as such.

           Respectfully submitted,

           Tarik D. Turfe (P83690)
           Hammoud, Dakhlallah,
           & Associates, PLLC
           Attorney for Plaintiff
           6050 Greenfield Rd., Ste., 201
           Dearborn, MI 48126
           (313) 551-3038
Dated: March 31, 2025    tt@hdalawgroup.com

           Edmond E. Salem, Esq.

31

(*application for admission forthcoming*)
THE SALEM LAW FIRM, P.C.
Attorney for Plaintiff
11620 Wilshire Blvd., Suite 715
Los Angeles, CA 90025
PH (310) 828-7882

Dated: March 31, 2025          ees@thesalemlawfirm.com